FILED

2022 Aug-22  PM 04:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LEE ANN NEWTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-174-GMB |
| | ) | |
| KILOLO KIJAKAZI,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On December 4, 2018, Plaintiff Lee Ann Newton filed an application for a period of disability and disability insurance benefits ("DIB"). Her alleged disability onset date is December 1, 2016.[2] Newton's application was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on March 24, 2020 and denied Newton's claims on April 9, 2020. Newton requested a review of the ALJ's decision by the Appeals Council, which declined review on December 7, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of December 7, 2020.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Newton amended her alleged onset date from January 15, 2013 to December 1, 2016. R. 40–41.

Newton's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 10. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[3]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the

---

[3] In general, the legal standards are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the

Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Newton bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Newton was 51 years old at her date last insured. R. 34, 181, 183.  Her primary complaint is degenerative disc disease with neuropathy in her legs and feet. R. 37. She also has osteoarthritis and diabetes. R. 38.  In her disability report, Newton alleged the following medical conditions: ulnar neuropathy; perpetual neuropathy in her legs, arms, and hands; severe carpal tunnel syndrome in both arms and hands; uncontrolled diabetes; and a degenerative back condition with multiple bulging discs. R. 203.

Newton graduated high school, attended college for three years, and attended one year of technical school. R. 35.  She lives in a single-family home with her husband, father, and mother. R. 34.  Her past work experience includes employment

as an office manager, as a receptionist, and as a senior planning analyst at Blue Cross Blue Shield of Alabama. R. 36–37.  She testified that she stopped working in 2013 but held a temporary job until April 2014. R. 35–36.

Newton testified that during the relevant time period her pain resulted in an inability to sit or stand for long periods or to carry any weight. R. 38–39.  Her fingers went numb when she typed and her feet often went numb with a tingling and burning sensation. R. 39.  She also had back spasms. R. 39.  All of these issues necessitated that she frequently stand up and walk around before sitting back down. R. 39.  Newton also testified that she has "perpetual neuropathy" "in all four limbs" and "ulnar neuropathy in both ring finger and pinkie finger in both hands," which results in extreme numbness, tingling, and burning. R. 41.

Newton testified that she can walk and stand for five to ten minutes before she has to take a break, shift her weight, lean on something, or move. R. 42–43.  She can sit for 15 to 20 minutes but then needs to move around in her chair or stand up. R. 43.  Newton said her doctor told her not to lift anything but she can lift five pounds even with numbness in her fingers. R. 43.  She does her own grocery shopping, banking, and personal errands, but she prefers to have help and chooses to ride an electric cart while shopping. R. 43.  She can drive but testified that she is "very limited" depending on how she feels that day. R. 43–44.  She makes herself simple meals, bathes, and dresses herself. R. 45.  She performs some light housework "a

little bit at a time." R. 45.

Newton's primary physician, Dr. Leigh Copeland, completed a Physical Residual Functional Capacity Questionnaire on July 8, 2019, but stated that all of her opinions were consistent with Newton's physical condition before December 31, 2016. R. 459–63. She stated on the questionnaire that Newton had "burning pain from low back to feet; weakness in legs and feet; [and] numbness in feet." R. 459. Dr. Copeland listed her prognosis as "poor" and noted an abnormal MRI of Newton's lumbar spine reflecting disc compression, nerve impingement, and spasms. R. 459. She observed that a neurosurgeon did not recommend surgery and that "steroid shot, epidural blocks, as well as narcotic pain medications and neuropathic medications have been the mainstay of her treatment." R. 459.

Dr. Copeland then answered a series of questions by checking boxes, circling pre-printed answers, or filling in answer blanks. R. 460–63. When asked "How often during a typical workday is your patient's experience of pain and other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks," she checked "Frequently." R. 460. In answering the question "To what degree can you patient tolerate work stress," she checked the box next to "Incapable of even 'low stress' jobs," and explained that Newton "struggles to tolerate the stress of her daily life and her pain, severe physical limitation, and very limited resources." R. 460. Dr. Copeland offered the opinion that Newton could

walk less than one block without rest or severe pain, could sit for 30 minutes at a time, could stand for 15 minutes at a time, and that she could sit, stand, or walk for less than two hours total during an eight-hour workday with typical breaks. R. 460–61.  She further opined that Newton would need to walk for five minutes every hour during the workday, take five to ten minute breaks each hour, and require a job that permits shifting of positions at will. R. 461.  Dr. Copeland stated that Newton could never lift anything, even items weighing less than ten pounds; could rarely twist and climb stairs; could never stoop, bend, crouch, or squat; and had significant limitations in reaching, handling, and fingering. R 462.

The ALJ issued her decision on April 9, 2020. R. 41.  Under step one of the five-step evaluation process, she found that Newton had not engaged in substantial gainful activity during the period from her alleged onset date of December 1, 2016 through her date last insured of December 31, 2016. R. 17.  The ALJ concluded that Newton suffers from the severe impairments of degenerative disc disease, obesity, diabetes mellitus, neuropathy, and arthritis in her back.  R. 17.  The ALJ noted that these medically determinable impairments cause significant limitations to her ability to perform basic work activities. R. 32.  The ALJ found that Newton's medically determinable impairment of depression did not cause more than minimal limitation in her ability to perform basic mental work activities. R. 17–18.  And the ALJ concluded at step three of the analysis that none of Newton's impairments satisfied

or medically equaled the severity of one of those listed in the applicable regulations. R. 18–19.

Before proceeding to the fourth step, the ALJ determined that Newton had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). R. 20.  More specifically, the ALJ found that Newton had the following limitations with respect to light work:

> Lifting 20lbs occasionally and 10lbs frequently; carrying 20lbs occasionally and 10lbs frequently; sitting for 6hrs, standing for 6hrs, walking for 6hrs each during an 8 hour workday; and can push and pull as much as she can lift and carry.  The individual can frequently reach overhead and out right bilaterally; can frequently finger, feel and handle bilaterally.  The individual can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and can occasionally stoop, knee, crouch, and crawl.  The individual should never work at unprotected heights or with moving mechanical parts, and can occasionally be exposed to vibration.

R. 20.  At the fourth step, the ALJ considered Newton's age, education, work experience, and RFC in determining that she was capable of performing her past relevant work. R. 21–23.  In the alternative, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Newton can perform, including work as a cashier II, mail clerk, and office helper. R. 22–23.  Therefore, the ALJ concluded that Newton was not under a disability as defined by the Social Security Act at any time from December 1, 2016, the alleged onset date, through December 31, 2016, the date last insured. R. 23.  Based on these findings, the ALJ denied Newton's application. R. 24.

## IV.  DISCUSSION

Newton makes three arguments in favor of remand: (1) the ALJ did not give proper weight to the opinion of her treating physician in formulating her RFC, (2) the ALJ did not appropriately develop the record to infer her disability onset date based on mental impairment under Social Security Ruling 18-01p, and (3) the ALJ erred in her consideration of Newton's subjective complaints of pain. Doc. 15 at 3–19.  The court rejects each argument for the following reasons.

## A.    Weight to Dr. Copeland's Opinion

Newton argues that the ALJ failed to accord substantial weight to the opinion of her treating physician, Dr. Copeland, without articulating good cause for doing so, as required by the Eleventh Circuit's treating physician rule. Doc. 15 at 3–12. The Commissioner argues that Newton's reliance on the treating physician rule is misplaced because the Social Security Administration adopted new regulations governing the Commissioner's evaluation of medical opinions for claims filed after March 27, 2017, and that the ALJ properly evaluated Dr. Copeland's opinion under the new regulations. Doc. 21 at 7–13.  The court agrees with the Commissioner.

On January 18, 2017, the Social Security Administration published final rules titled "Revision to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Reg. 5844).  Because these final rules were effective

as of March 27, 2017 and Newton applied for benefits after that date, the new rules apply to her claim. Under 20 C.F.R. § 404.1520c(a), the ALJ need not give any specific evidentiary weight to medical opinions, including those from the claimant's own medical sources. In *Harner v. Social Security Administration, Commissioner*, __ F. 4th __, 2022 WL 2298528, at * 3–4 (11th Cir. June 27, 2022), the Eleventh Circuit confirmed that these new regulations eliminate the treating physician rule.

The ALJ thus should consider the following factors in reviewing a doctor's opinion: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). While the ALJ must explain how she considered supportability and consistency in her decision, she need not explain how she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ is not required to articulate how she considers each medical opinion or prior administrative medical finding; the application of each factor to all of the medical evidence is sufficient. 20 C.F.R. § 404.1520c(b)(1).

Considering these factors, the court concludes that substantial evidence supports the ALJ's evaluation of Dr. Copeland's medical opinion. *See Thomason v. Soc. Sec. Admin., Comm'r*, 2021 WL 4061423, *7 (N.D. Ala. Sept. 7, 2021) (holding that "so long as the finding of the ALJ is supported by substantial evidence, it must be affirmed by this Court"). Dr. Copeland completed a Physical Residual Functional

Capacity Questionnaire on July 8, 2019. R. 459–63.  As noted by the ALJ, this opinion came well after the date last insured.  And while Dr. Copeland checked a box indicating that her responses and opinions were consistent with Newton's physical condition on or before December 31, 2016, Dr. Copeland's own medical records during the relevant time period do not support the extreme limitations reflected in the questionnaire.  Newton did not see Dr. Copeland during the relevant time period or in the month before or two months afterwards.  Instead, the medical records document visits in October 2016 and March 2017, and both involved medication refills. *See* R. 312–21.  During both visits, Dr. Copeland's functional assessment reflected that Newton had "no recent falls, ambulates without assistance, able to perform [activities of daily living], no change in activity level, drives automobile." R. 313, 318.  Newton denied abnormal gait, focal weakness, or incoordination. R. 314, 318.  The only notation about treatment said to continue medication management. R. 315–18, 320–22.  Simply put, the medical examination reports largely were normal and the treatment was limited to the existing medication regimen.  This provides a sufficient basis for discounting Dr. Copeland's opinions. *See Belle v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or

12

medication is not disabling."). Newton's reports that she engaged in the normal activities of daily living during this time period also undermine her claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (upholding ALJ's finding that subjective complaints were inconsistent with a record of simple daily activities).

In addition, Dr. Copeland did not provide any substantive explanation for her opinions about the majority of the limitations noted on the physical capacities questionnaire. Instead, she checked boxes, circled responses, or filled in blanks without explaining her answers. Such conclusory opinions have limited probative value. Indeed, several courts have criticized "form reports" like these, where a physician merely checks off a list of symptoms without explaining the evidence that supports the decision. *See Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (noting that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have

limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."). The lack of explanations, combined with the lack of support in the contemporary medical documents, undermines Dr. Copeland's July 8, 2019 opinion.

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Newton's medical evidence and did not err in her consideration of Dr. Copeland's opinion. The ALJ clearly articulated her reasons for finding the opinion not to be well supported and inconsistent with the medical records. The court finds that substantial evidence supported this determination.

**B.      Consultation of a Medical Expert**

Social Security Ruling 18-01p states:

At the hearing level of our administrative review process, if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of [a medical expert ("ME")] by soliciting testimony or requesting responses to written interrogatories. . . . The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

As the text of SSR 18-01p makes clear, the ALJ may enlist the help of a medical expert in determining the onset date, but this decision is firmly within the discretion of the ALJ. An ALJ is not under any obligation to consult with a medical expert in making this determination, and therefore the ALJ did not err by failing to do so in

Newton's case.

Moreover, substantial evidence supports the ALJ's decision that Newton's depression was not severe between December 1 and December 31, 2016. Newton does not point to any evidence showing that her depression or any other mental impairment was disabling during the relevant time period. *See* Doc. 15 at 12–14. Instead, the medical records from October 2016 and March 2017 establish that Newton denied depression, anxiety, decreased concentration, irritability, panic attacks, sleep disturbances, sadness, or tearfulness. R. 314, 319. Dr. Copeland opined in October 2016 that Newton exhibited grossly normal mental status and normal judgment. R. 319. And in March 2017, the medical records reveal a negative screen for depression. R 313. Her earlier records contain similar observations and findings. R. 324, 335, 344, 363. Without any corroborating evidence to indicate a severe mental impairment, the ALJ did not err by failing to consult a medical expert about Newton's non-severe mental impairment.

## C.   **Pain Standard**

Newton contends that the ALJ did not properly evaluate the credibility of her subjective complaints of pain. Doc. 15 at 14–18. The Commissioner contends that substantial evidence supports the ALJ's subjective complaint analysis. Doc. 21 at 15–18. For the following reasons, the court finds that substantial evidence supports the ALJ's determination and that the ALJ applied the proper standards to reach her

conclusions.

In addressing a claimant's subjective description of pain and symptoms, the

law is clear that in order to

> establish a disability based on testimony of pain and other symptoms,
> the claimant must satisfy two parts of a three-part test showing:
> (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged
> pain; or (b) that the objectively determined medical condition can
> reasonably be expected to give rise to the claimed pain.  If the ALJ
> discredits subjective testimony, he must articulate explicit and adequate
> reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *see*

*also* 20 C.F.R. §§ 404.1529.  If a claimant satisfies the first part of the test, the ALJ

must evaluate the symptoms' intensity, persistence, and effect on the claimant's

ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d);

20 C.F.R. §§ 416.929(c) & (d).   While evaluating the evidence, the ALJ must

consider whether inconsistencies exist within the evidence or between the claimant's

statements and the evidence, including her history, medical signs and laboratory

findings, and statements by medical sources or other sources about how her

symptoms affect her. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4).  In determining

whether substantial evidence supports an ALJ's credibility determination, "[t]he

question is not . . . whether the ALJ could have reasonably credited [the claimant's]

testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r*

*of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).  The ALJ is not required to

conduct an explicit symptom analysis, but the reasons for her findings must be obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Newton's medically determinable impairments could reasonably be expected to produce the alleged symptoms but that her statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 20. This determination is supported by substantial evidence.

The records from the time surrounding the relevant one-month period do not support the claimed severity of Newton's symptoms. Instead, as discussed above, the limited medical records show that she had not had any recent falls, ambulated without assistance, and could perform many of her activities of daily living without assistance or with minimal assistance. R. 313, 318. Diagnostic imagery revealed mild impairment (R. 508–16) and examination notes indicate that Newton had no significant abnormalities, normal strength, and independent ambulation. R. 272, 370–85. Newton also denied abnormal gait, focal weakness, or incoordination. R. 314, 318. While the medical records reflect the need for some limitations, the ALJ's RFC formulation accounted for these limitations.

Furthermore, while Newton is correct that an ALJ may not reject a claimant's subjective complaints solely because the objective medical evidence does not substantiate the complaints, 20 C.F.R. § 404.1529(c)(2), this regulation instructs ALJs to "carefully consider any other information [a claimant] may submit about [his] symptoms" and provides the following six non-exhaustive factors when evaluating the subjective complaints: daily activities; "the location, duration, frequency, and intensity" of other symptoms; "precipitating and aggravating factors;" "the type, dosage, effectiveness, and side effects" of medication taken to alleviate symptoms; any other treatment for alleviating symptoms; and measures a claimant used to alleviate the symptoms. 20 C.F.R. § 404.1529(c)(3). These are exactly what the ALJ considered here in rejecting Newton's subjective complaints and the court finds no error in the ALJ's evaluation.

In sum, the ALJ correctly considered "the consistency of [Newton's] statements" with the remainder of the evidence. *See* SSR 16-3p, 2017 WL 5180304, at *8. The ALJ's determinations are supported by substantial evidence and this claim is without merit.

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Therefore, the decision of the Commissioner is due to be affirmed. A final judgment

will be entered separately.

DONE and ORDERED on August 22, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE